# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| **MICHAEL D. VAN DEELEN,** ) | |
| ) | |
| **Plaintiff.** ) | |
| ) | |
| v. ) | Case No. 04-989-CV-W-GAF |
| ) | |
| **CITY OF KANSAS CITY, MISSOURI,** ) | |
| **et. al.,** ) | |
| ) | |
| **Defendants.** ) | |

## ORDER

Presently before this Court are two Motions for Judgment on the Pleadings. The first Motion was filed by Defendants Joseph Moreland, Margaret Evans and Lawrence Franklin (collectively "Human Resources Board Defendants"). (Doc. #16). The second Motion was filed by Defendants Wayne Cauthen, John Franklin and Patrick Reisenbichler. (Doc. #41). The Defendants filing these Motions argue that they are entitled to judicial immunity or, alternatively, official immunity from this suit filed by Michael D. Van Deelen ("Van Deelen"). (Doc. #17). Van Deelen opposes both of these Motions. (Doc. #21, #44). Due to overlapping factual and legal issues, the Court will rule on both of these Motions in this Order. Finding that the Human Resources Board Defendants and Defendants Wayne Cauthen, John Franklin and Patrick Reisenbichler have failed to establish that they are entitled to either judicial or official immunity, these Motions for Judgment on the Pleadings (Doc. #16, #41) are DENIED.

**DISCUSSION**

**I.     Facts**

In his complaint, Van Deelen contends that he was unlawfully terminated from his employment with the City of Kansas City, Missouri ("City") for allegedly violating the City's residency policy. (Doc. #1).[1] Van Deelen asserts that he was informed upon being hired that he had to move within the city limits of Kansas City, Missouri, within nine months to satisfy the City's residency requirement. On May 1, 2001, prior to the expiration of the nine month period, Van Deelen leased an apartment within the city limits and stayed at that address on nights prior to work days. However, Van Deelen's family did not move into the apartment but rather remained in their home in Eudora, Kansas because Van Deelen's son was a senior in a Kansas high school and Van Deelen's wife worked in Lawrence, Kansas. Van Deelen, whose son did not have his own car, drove from his apartment in Kansas City to Eudora every morning and evening to take his son to and from school.

In the summer of 2001, the City's residency requirement was waived with respect to Van Deelen. However, Van Deelen remained a resident of Kansas City, Missouri. In late 2002, Van Deelen claims that two City employees began to stalk and surveil him while he was taking his son to school in the morning. Van Deelen approached one of these City employees who was attempting to film him and asked him to identify himself. The City employee informed Van Deelen that the City was investigating Van Deelen's residency status. The City employee further notified Van Deelen that an afternoon meeting was being held

---

[1] All the facts set forth in this section are derived from Van Deelen's complaint, Doc. #1.

to discuss Van Deelen's residency status and if Van Deelen did not attend, he would be fired. In the afternoon meeting, Van Deelen was suspended for allegedly violating the City's residency policy.

On December 6, 2002, about a month after Van Deelen's suspension, a "Pretermination Hearing" was held in Kansas City, Missouri. Defendant Patrick Reisenbichler ("Defendant Reisenbichler") presided over this hearing. According to Van Deelen, the Pretermination Hearing mirrored the afternoon meeting. Van Deelen presented evidence of his Kansas City residency (which included a copy of his apartment lease and cancelled rent checks) and testified about his daily trips to and from Eudora to take his son to and from school. At the conclusion of the Pretermination Hearing, Defendant Reisenbichler recommended that Van Deelen's employment be terminated for violating the City's residency policy. On December 19, 2002, the Director of the City's Information Technology Department terminated Van Deelen for violating the City's residency policy. Van Deelen was informed by the Director that it was a violation of the City's residency policy for Van Deelen to make daily trips from Kansas City, Missouri to Eudora, Kansas for the purpose of taking his son to and from school.

Van Deelen appealed his termination to the City's Human Resources Board ("HRB"). Hearings were held and evidence taken in HRB Case No. 03-16 on March 4, 2003, May 13, 2003, and August 5, 2003 in Kansas City, Missouri. Testimony was given by Van Deelen and Defendants Beth Lacey, Richard Razniak and Roy Greenway. Testimony was also given by City employees Mary Miller, Don Jarrett and Brian Loopey. Van Deelen presented documentary evidence of his Kansas City apartment including the current lease and cancelled rent checks. Van Deelen contends that he sought to subpoena the notes and records relating to the City's surveillance of him but these documents were never produced

3

and the subpoena was not enforced. On November 25, 2003, the Human Resources Board sustained the City's decision to terminate Van Deelen's employment for violating the City's residency policy.

On December 1, 2003, pursuant to Section 125 of the City Charter, Van Deelen appealed the Human Resources Board's decision to Defendant Wayne Cauthen ("Defendant Cauthen"), the City Manager. Defendant John Franklin ("Defendant J. Franklin") allegedly recommended to Defendant Cauthen that the Human Resources Board's decision be affirmed. On February 19, 2004, Defendant Cauthen affirmed the Human Resources Board's decision to terminate Van Deelen's employment.

Consequently, Van Deelen filed this action alleging various deprivations of his Constitutional rights. Van Deelen asserts that the Human Resources Board Defendants and Defendants Cauthen, J. Franklin, and Reisenbichler "unlawfully denied plaintiff his constitutional rights of freedom of assembly, freedom of association, freedom of speech, due process and equal protection of the law" and "unlawfully discharged the plaintiff from his employment with the City of Kansas City, Missouri, in retaliation for plaintiff's exercising of his Constitutional rights of freedom of assembly, freedom of association and freedom of speech." Van Deelen seeks $1,000,000.00 in compensatory damages, $2,000,000.00 in punitive damages, court costs, nominal damages, various declaratory judgments and an injunction to remedy the alleged Constitutional deprivations.

The Human Resources Board Defendants have filed a Motion for Judgment on the Pleadings asserting that they are entitled to absolute judicial immunity because they were engaging in a judicial function when they reviewed the termination of Van Deelen's employment. (Doc. #17). Defendant Reisenbichler claims that he is entitled to absolute judicial immunity because he was acting in a judicial capacity when he presided over the Pretermination Hearing. (Doc. #41). Finally, Defendants Cauthen and J. Franklin assert

4

that they are protected by absolute judicial immunity because they exercised a traditionally judicial function by reviewing the decision of the Human Resources Board. Id. Alternatively, the Human Resources Board Defendants and Defendants Reisenbichler, Cauthen and J. Franklin contend that they are protected from Van Deelen's Constitutional claims by the doctrine of official immunity because terminating or affirming the termination of Van Deelen's employment was a discretionary, as opposed to a ministerial, act.

**II.     Standard**

The Human Resources Board Defendants and Defendants Cauthen, J. Franklin and Reisenbichler have filed this Motion seeking dismissal from this case on the grounds that they are protected by absolute judicial immunity or, alternatively, official immunity. Immunity is an affirmative defense which may be upheld on a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) only when immunity is established on the face of the complaint. *See* Hafley v. Lohman, 90 F.3d 264, 266 (8th Cir. 1996). When considering this Motion, the Court will assume that all facts alleged in the complaint are true and construe those allegations in a light most favorable to Van Deelen. *See* Fletcher v. Conoco Pipe Line Co., 129 F.Supp.2d 1255, 1258 (W.D. Mo. 2001). The Court will disregard all matters outside the pleadings and will further ignore "legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations." Wiles v. Capital Indem. Corp., 280 F.3d 868, 870 (8th Cir. 2002). Dismissal is appropriate only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." McCormick v. Aircraft Mechanics Fraternal Ass'n, 340 F.3d 642, 644 (8th Cir. 2003).

**III.    Analysis**

   *A.    Absolute Judicial Immunity*

The Human Resources Board Defendants and Defendants Cauthen, J. Franklin and Reisenbichler contend that they are protected by absolute judicial immunity for all claims brought against them by Van Deelen.  With respect to the doctrine of absolute judicial immunity, the Supreme Court has observed: "Few doctrines were more solidly established at common law than the immunity of judges from liability for damages for acts committed within their judicial jurisdiction." Cleavinger v. Saxner, 474 U.S. 193, 199 (1985) *quoting* Pierson v. Ray, 386 U.S. 547, 553-54 (1967).  Absolute judicial immunity has been extended to other officials "whose acts are an integral part of the judicial process," such as federal hearing examiners, administrative law judges, federal and state prosecutors, witnesses who testify in judicial proceedings, and grand jurors.  *See* Brown v. Griesenauer, 970 F.2d 431, 435 (8th Cir. 1992) and Cleavinger, 474 U.S. at 200.

The Eighth Circuit has cautioned against analyzing immunity "only in terms of the identity or status of the official or class of officials." Brown, 970 F.2d at 436.  Rather, in accordance with well-established Supreme Court precedent, courts are urged to adopt a "functional approach to immunity law." *See* Brown, 970 F.2d at 436 *quoting* Harlow v. Fitzgerald, 457 U.S. 800, 810 (1982) ("The Supreme Court has instead developed a functional approach to immunity law.").[2]  A functional approach to immunity law requires courts to "examine the nature of the functions with which a particular official or class of officials

---

[2] *See also*, Forrester v. White, 484 U.S. 219, 223 (1988) ("Running through our cases, with fair consistency, is a 'functional' approach to immunity questions other than those that have been decided by express constitutional or statutory enactment."); Cleavinger, 474 U.S. at 201 ("The Court has said that in general our cases have followed a 'functional' approach to immunity law.").

6

has been lawfully entrusted," and "seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions." Forrester v. White, 484 U.S. 219, 224 (1988).

When evaluating immunity claims, courts must "bear in mind that immunity status is for the benefit of the public as well as for the individual concerned." Cleavinger, 474 U.S. at 203. "Officials who seek exemption from personal liability have the burden of showing that such an exemption is justified by overriding considerations of public policy." Forrester, 484 U.S. at 224. "The Court has recognized a category of 'qualified' immunity that avoids unnecessarily extending the scope of the traditional concept of absolute immunity." Id. The Supreme Court has noted that "the line between absolute immunity and qualified immunity often is not an easy one to perceive and structure." Cleavinger, 474 U.S. at 206. As such, the Supreme Court has identified the following factors as characteristic of the judicial process and to be considered in determining whether a government official performing an adjudicatory function is entitled to absolute, as contrasted with qualified, immunity:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

Cleavinger, 474 U.S. at 201-02 *citing* Butz v. Economou, 438 U.S. 478, 512 (1978).

Butz v. Economou, 438 U.S. 478 (1978) is credited with announcing the Supreme Court's test for extending judicial immunity to government officials who perform judicial functions but are not professional judges. In Butz, the Supreme Court considered the personal immunity of executive branch employees performing traditional judicial functions. After an unsuccessful Department of Agriculture

7

proceeding to revoke or suspend the registration of Butz's commodity futures commission company, Butz filed an action for damages against the Chief Hearing Examiner of the U.S. Department of Agriculture (who presided over the administrative hearing and recommended revoking or suspending Butz's company's registration) and the Judicial Officer of the U.S. Department of Agriculture (who affirmed the Chief Hearing Examiner's decision). Butz, 438 U.S. at 481. Butz asserted various deprivations of his Constitutional rights, including denial of due process and free expression. Butz, 438 U.S. at 483. The district court dismissed Butz's claims finding that the Chief Hearing Examiner and the Judicial Officer were entitled to absolute judicial immunity. Butz, 438 U.S. at 480. The Second Circuit Court of Appeals reversed, holding that the Chief Hearing Examiner and the Judicial Officer were only entitled to qualified immunity. Butz, 438 U.S. at 480. Upon granting certiorari, the Supreme Court found that the Chief Hearing Examiner and the Judicial Officer were entitled to absolute judicial immunity. Butz, 438 U.S. at 514.

In Butz, the alleged Constitutional deprivations occurred during a hearing before the U.S. Department of Agriculture. Such a proceeding is conducted pursuant to the Administrative Procedure Act ("APA") which guarantees many of the same procedural safeguards that are provided in a traditional judicial proceeding. Agency proceedings governed by the APA are "adversary in nature" and are "conducted before a trier of fact insulated from political influence." Butz, 438 U.S. at 513. The parties are entitled to present oral and documentary evidence and a transcript of testimony and exhibits is produced. Id. The parties are further entitled to know findings and conclusions on all issues of fact, law or discretion. Id. The APA empowers the hearing officer to issue subpoenas, rule on proffers of evidence, regulate the course of the hearing and make or recommend decisions. Id. Furthermore, the structure of the APA ensures that the hearing examiner exercises his own independent judgment. Id. The Supreme Court

8

proceeded to hold "that persons subject to these restraints and performing adjudicatory functions within a federal agency are entitled to absolute immunity from damages liability for their judicial acts." Butz, 438 U.S. at 514.

Butz and the other cases cited by the Human Resources Board Defendants and Defendants Cauthen, J. Franklin and Reisenbichler in support of their position that they are entitled to absolute judicial immunity are easily distinguishable from the present case. In all of these cases, the alleged Constitutional deprivation occurred in proceedings that were subject to the extensive procedural safeguards of either the APA or the Missouri APA. The Supreme Court clearly stated in its holding in Butz that the extensive procedural safeguards of the APA entitled the Chief Hearing Examiner and the Judicial Officer to absolute judicial immunity. *See* Butz, 438 U.S. at 514. Similarly, the impeachment hearing held before a Board of Alderman in Brown v. Griesenauer, 970 F.2d at 438, was "subject to extensive procedural safeguards, as set forth in the [Missouri] administrative procedure act, which reduce the need for a private damages remedy as a means of controlling unconstitutional conduct." The plaintiffs in Loftin v. United States, 72 F.3d 133 (1995) (unpublished), claimed that they were denied procedural and substantive due process in a proceeding before a state administrative agency, the Arkansas Securities Department. An administrative law judge presiding over the Merit Systems Protection Board, an independent, adjudicatory federal agency that hears and decides appeals of certain personnel actions filed by federal employees was found to enjoy absolute judicial immunity in Weber v. Salyer, 911 F.Supp. 376, 377 (E.D. Mo. 1996). Finally, members of the Board of Healing Arts, a Missouri agency, were afforded quasi-judicial immunity for their decision to file an administrative complaint against the plaintiffs in Group Health Plan, Inc. v. State Board of Registration for the Healing Arts, 787 S.W.2d 745, 750 (Mo. App. 1990).

9

It is not apparent on the face of the pleadings that the Pretermination Hearing conducted by Defendant Reisenbichler, the proceeding before the Human Resources Board, and the review of the Human Resources Board's decision by Defendants Cauthen and J. Franklin were governed by procedural safeguards similar to the APA or the Missouri APA. The Supreme Court has found that where the adjudicatory function performed by a government official is not subject to rigid procedural safeguards, an absolute exemption from personal liability for unconstitutional conduct contravenes public policy. *See* Cleavinger, 474 U.S. 193 199-209.

In Cleavinger v. Saxner, the Supreme Court considered the Butz factors and declined to extend absolute judicial immunity to the members of a prison's Institution Discipline Committee. Cleavinger, 474 U.S. at 206. In Cleavinger, 474 U.S. at 196-97, federal prison inmates were found guilty by the prison's Institution Discipline Committee of encouraging other inmates to engage in a work stoppage and were ordered to be placed in administrative detention and to forfeit a specified number of days of 'good time.' The guilty finding was subsequently reversed on appeal by the prison's Warden and the Regional Director of the Bureau of Prisons, prompting the inmates to file suit against the members of the prison's Institution Discipline Committee asserting violations of their First, Fourth, Fifth, Sixth and Eighth Amendment rights. Cleavinger, 474 U.S. at 198. The district court dismissed the inmates' complaint finding that the members of the prison's Institution Discipline Committee were entitled to absolute judicial immunity. Id. The lawsuit was subsequently reinstated by the district court in light of a decision by the Seventh Circuit Court of Appeals that members of a disciplinary committee at a Wisconsin juvenile facility were entitled to only qualified immunity. Id. The case was tried to a jury who found that the members of the prison's Institution Discipline Committee violated the inmates' Fifth Amendment Due Process rights. Id. The members of the

10

prison's Institution Discipline Committee appealed the district court's denial of its motion for judgment notwithstanding the verdict on absolute judicial immunity grounds and the Seventh Circuit affirmed. Id. at 198-99.

The Supreme Court affirmed the district court's finding that the members of the prison's Institution Discipline Committee were only entitled to qualified, rather than absolute, judicial immunity. Id. at 207-8. The Court noted that the prison's Institution Discipline Committee was engaging in an adjudicatory function when they conducted the discipline hearings as they heard testimony, received documentary evidence, evaluated the credibility of witnesses, weighed the evidence and rendered a decision. Id. at 203. Nevertheless, the Court concluded that the Institution Discipline Committee was not engaging in a "classic" adjudicatory function when conducting the discipline proceeding. Id. at 203.

The Court remarked that the members of the prison's Institution Discipline Committee were "not professional hearing officers, as are administrative law judges." Id. at 203-04. The Court noted the existence of various procedural safeguards in the proceeding before the Institution Discipline Committee including:

> The qualifications for committee service, prior notice to the inmate, representation by a staff member, the right to present certain evidence at the hearing, the right to be present, the requirement for a detailed record, the availability of administrative review at three levels and the availability of ultimate review in federal court.

Id. at 206. However, the Court observed that the following procedural safeguards which are contained in the APA and function to guard against Constitutional deprivations were absent:

> The prisoner was to be afforded neither a lawyer nor an independent nonstaff representative. There was no right to compel the attendance of witnesses or to cross-examine. There was no right to discovery. There was no cognizable burden of proof.

11

> No transcript was afforded. Information presented often was hearsay or self-serving. The committee members were not truly independent.

Id. at 206. Based on the lack of adequate procedural safeguards, the Court held that "the members [of the prison's Institution Discipline Committee] had no identification with the judicial process of the kind and depth that has occasioned absolute immunity." Id.

Finding that the societal importance of the dispute resolution function dictates that members of the prison's Institution Disciple Committee be afforded some type of immunity, the Supreme Court concluded that the members of the prison's Institution Discipline Committee were entitled to qualified immunity. *See* Id. at 203-07. The Court noted that immunity was necessary to encourage citizens to serve on the committee without the threat of civil litigation. Id. Therefore, the Court held that the members of the prison's Institution Discipline Committee were entitled to qualified immunity so long as their conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Id. at 207.[3]

This Court finds that the Pretermination Hearing, the proceeding before the Human Resources Board and the review of the Human Resources Board's decision by Defendants Cauthen and J. Franklin are more analogous to the proceeding before the prison's Institution Discipline Committee in Cleavinger than the proceeding before the U.S. Department of Agriculture in Butz. Although the Human Resources Board Defendants and Defendants Reisenbichler, Cauthen, and J. Franklin engaged in an adjudicatory

---

[3]*See also* Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) ("We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.")

12

function when recommending or affirming the termination of Van Deelen's employment, they are not entitled to absolute judicial immunity because insufficient procedural safeguards existed in the proceedings to protect against constitutional violations. Each proceeding and its attendant procedural safeguards (or lack thereof) will be considered by the Court in the following sections.

    A.    <u>The Pretermination Hearing</u>

Defendant Reisenbichler presided over Van Deelen's Pretermination Hearing wherein he "received evidence, evaluated the credibility of witnesses and weighted their testimony and made findings of fact and conclusions of law that Van Deelen should be terminated." (Doc. #41). Like the procedural safeguards in the proceedings before the Institution Discipline Committee in <u>Cleavinger</u>, Van Deelen received notice of the Pretermination Hearing and was permitted to be present and present certain evidence at the hearing. Additionally, Van Deelen was entitled to administrative review at two levels of Defendant Reisenbichler's recommendation to terminate Van Deelen's employment.

However, as these minimal procedural safeguards were insufficient to support absolute judicial immunity in <u>Cleavinger</u>, this Court finds that these same procedural safeguards fail to cloak Defendant Reisenbichler with absolute judicial immunity. Like the plaintiff in <u>Cleavinger</u>, Van Deelen was not represented by a lawyer or independent nonstaff representative. Van Deelen had no right to discovery and was not entitled to cross-examine any witnesses or test the sufficiency of the City's evidence that he violated the residency policy. There was no cognizable burden of proof and no written transcript of the proceedings was produced. There were no evidentiary standards which would ensure that the evidence presented at the Pretermination Hearing was not hearsay or self-serving. This Court is unable to analyze the independence of Defendant Reisenbichler as the pleadings fail to articulate any qualifications for his

13

position as the hearing officer. Based on the lack of procedural safeguards in the Pretermination Hearing to ensure the protection of Van Deelen's Constitutional rights, Defendant Reisenbichler is not entitled to absolute judicial immunity.

  B. <u>Proceeding before the Human Resources Board</u>

Van Deelen appealed the termination of his employment with the City to the Human Resources Board. The Human Resources Board Defendants assert that "they acted to adjudicate a dispute, they received evidence, made evidentiary rulings, evaluated the credibility of witnesses and weighed their testimony, and made findings of fact and conclusions of law." (Doc. #24). Like the procedural safeguards in the Pretermination Hearing and the proceedings before the Institution Discipline Committee in Cleavinger, Van Deelen was permitted to be present at the proceeding before the Human Resources Board and present certain evidence. Additionally, Van Deelen was entitled to administrative review of the Human Resources Boards' decision. It was unnecessary for the Human Resources Board to provide Van Deelen with notice of the proceeding because Van Deelen requested that the Human Resources Board review the termination of his employment.

The proceeding before the Human Resources Board had some additional procedural safeguards which were not present in the Pretermination Hearing. A written transcript of the proceeding was produced. Pursuant to Section 125 of the City Charter, the Human Resources Board was required to find "by the greater weight of the evidence" that Van Deelen was wrongfully discharged in order to reverse the termination of his employment.

Additional procedural safeguards governing the proceeding before the Human Resources Board are found in Section 125 of the City Charter; however, the pleadings do not reveal that they were adhered

14

to in this case. Section 125 of the City Charter provides that the review of personnel decisions by the Human Resources Board must be conducted "under such rules and regulations as the board may adopt." However, the pleadings do not identify any rules and regulations, other than those mentioned above, adhered to by the Human Resources Board in reviewing the termination of Van Deelen's employment. Section 125 of the City Charter further provides that the Human Resources Board may order the Director of Personnel to make an investigation and prepare a report on the matter. However, the pleadings do not indicate that the Director of Personal investigated and prepared a report on Van Deelen's termination at the request of the Human Resources Board. Finally, Section 125 of the City Charter empowers the Board to "compel the production of books and papers by subpoenas duces tecum and compel the attendance of witnesses by subpoena at the request of either the employee involved, the appointing authority or any member of the Board." The parties have stipulated that subpoenas were issued in connection with the proceeding before the Human Resources Board. However, Van Deelen contends that these subpoenas were not complied with or enforced.[4]

Similar to the proceeding before the Institution Discipline Committee in Cleavinger, a number of procedural safeguards were absent from the proceeding before the Human Resources Board. Van Deelen was not represented by a lawyer or an independent nonstaff representative at the proceeding. Van Deelen had no right to discovery. Van Deelen was not entitled to cross-examine witnesses or test the sufficiency

---

[4] The Human Resources Board Defendants neither admit nor deny whether the subpoenas were complied with, but rather state that a transcript of the proceedings before the Human Resources Board is available and is the best evidence of what was stated or produced in the proceeding. (Doc. #11, #15 at ¶ 26). When ruling on this Motion, the Court must assume that the statements in the complaint are true and construe the factual allegations in Van Deelen's favor. As such, the Court proceeds under the assumption that these subpoenas were not complied with.

15

of the City's evidence that he violated the residency policy. There were no evidentiary standards which would ensure that the evidence presented was not hearsay or self-serving. As the pleadings fail to articulate any qualifications for serving on the Human Resources Board or how the members are selected, the Court is unable to analyze the independence of the Human Resources Board Defendants.

Articulated but unapplied procedural safeguards fail to protect against unconstitutional conduct. Furthermore, although a written transcript of the proceedings before the Human Resources Board was produced and a cognizable burden of proof governed the proceedings, these additional procedural safeguards are insufficient to afford the Human Resources Defendants absolute judicial immunity. As the procedural safeguards of the proceeding before the Human Resources Board are only negligibly more protective than the procedural safeguards in Cleavinger, this Court finds that the Human Resources Board Defendants are not entitled to absolute judicial immunity.

        C.      <u>The Review of the Human Resources Boards' Decision by Defendants Cauthen and J. Franklin</u>.

Van Deelen appealed the Human Resources Boards' affirmation of Van Deelen's employment termination to Defendant Cauthen. Defendant Cauthen was empowered to review the decision of the Human Resources Board upon Van Deelen's written request pursuant to Section 125 of the City Charter. Defendant J. Franklin allegedly advised Defendant Cauthen to deny Van Deelen's appeal. Unlike the Pretermination Hearing and the proceeding before the Human Resources Board, the pleadings do not indicate that Defendant Cauthen and J. Franklin received evidence or evaluated and weighed the credibility of witnesses when reviewing the decision of the Human Resources Board. Defendant Cauthen did not issue any findings of fact or conclusions of law when affirming the Human Resources Boards' decision. Van

16

Deelen was not represented by a lawyer or an independent nonstaff representative, had no right to discovery, was not entitled to cross-examine any witnesses or test the sufficiency of the City's evidence that he violated the residency policy when the decision to affirm his employment termination was reviewed by Defendant Cauthen. There was no cognizable burden of proof, no written transcript of the appeal was produced and no evidentiary standards governed the appeal. In short, Defendant Cauthen's review, as assisted by Defendant J. Franklin, of the Human Resources Board's decision had significantly fewer procedural safeguards than the Pretermination Hearing. As such, this Court rejects the argument that Defendants Cauthen and J. Franklin are entitled to absolute judicial immunity.

### B. *Official Immunity*

The Human Resources Board Defendants and Defendants Cauthen, J. Franklin and Reisenbichler have alternatively argued that they are entitled to official immunity for their decision to terminate or affirm the termination of Van Deelen's employment. According to the Defendants, "public officers are not liable for damages cause by their discretionary acts, functions or omissions performed in the exercise of their official duties." (Doc. #17, #41). The Defendants assert that they are entitled to official immunity because they are public officers who engaged in a discretionary act when terminating or affirming the termination of Van Deelen's employment. (Doc. #17, #41).

The Defendants' misstatement of the law of official immunity as it applies to the facts of this case is glaringly obvious. According to the doctrine of official immunity, public officers acting within the scope of their authority are immune from *negligence* suits arising from discretionary, as opposed to ministerial, acts. McGuckin v. City of St. Louis, 910 S.W.2d 842, 844 (Mo. Ct. App. 1995). The four cases cited by the Defendants in support of their position that they are entitled to official immunity for their allegedly

17

discretionary acts all involve negligence claims asserted against government officials. *See* Kanagawa v. Freeman, 685 S.W.2d 831 (Mo. 1985) (en banc), Charron v. Thompson, 939 S.W.2d 885 (Mo. 1996 (en banc), Rustici v. Weidemeyer, 673 S.W.2d 762 (Mo. 1984) (en banc), Bachmann v. Welby, 860 S.W.2d 31 (Mo. App. 1993). Van Deelen has not asserted any negligence claims in his complaint. (Doc. #1).

Rather, Van Deelen alleges that the Defendants deprived him of various Constitutional rights including his rights to "freedom of assembly, freedom of association, freedom of speech, due process and equal protection of the law." (Doc. #1). When a plaintiff asserts a claim against a public officer for a violation of his Constitutional rights, the public officer will be protected by the doctrine of official immunity when the public officer's "conduct does not violate clearly established constitutional rights of which a reasonable person would have known." Hawkins v. Holloway, 316 F.3d 777, 787-88 (8th Cir. 2003). Here, the Defendants have not argued that they did not violate Van Deelen's Constitutional rights or, alternatively, that the allegedly violated Constitutional right was not clearly established at the time of the deprivation. Therefore, the Defendants are not entitled to official immunity because they failed to identify and apply the law governing the immunity of public officials from personal liability in actions alleging Constitutional deprivations.

## CONCLUSION

The Human Resources Board Defendants and Defendants Cauthen, J. Franklin and Reisenbichler have argued that they are entitled to absolute judicial immunity for their roles in the termination of Van Deelen's employment. This Court finds that these Defendants are not protected by absolute judicial immunity because the proceedings over which they presided lacked sufficient procedural safeguards to

18

ensure the protection of Van Deelen's Constitutional rights. As such, the Court finds that the Defendants are not protected by absolute judicial immunity and on that ground the Defendants' Motions for Judgment on the Pleadings are hereby DENIED.

Additionally, the Human Resources Board Defendants and Defendants Cauthen, J. Franklin and Reisenbichler have argued that they are alternatively entitled to official immunity for their roles in the termination of Van Deelen's employment. However, the Defendants have erroneously cited case law which fails to support their position. Although a public officer acting within the scope of his or her authority is immune from *negligence* suits arising from discretionary acts, Van Deelen's complaint alleges deprivations of his Constitutional rights. Government officials are shielded from personal liability in lawsuits asserting Constitutional violations only when their conduct does not violate a clearly established statutory or Constitutional right which a reasonable person would have known. The Defendants may be entitled to official immunity; however, they have failed to identify and argue the applicable law. As such, the Court finds that the Defendants are not protected by official immunity and on that ground the Defendants' Motions for Judgment on the Pleadings are hereby DENIED.

After careful consideration of the facts and arguments presented by the parties, it is HEREBY ORDERED:

- Defendants Joseph Moreland, Margaret Evans and Lawrence Franklins' Motion for Judgment on the Pleadings is DENIED. (Doc. #16).
- Defendants Wayne Cathen, John Franklin, and Patrick Reisenbichlers' Motion for Judgment on the Pleadings is DENIED. (Doc. #41).

**IT IS SO ORDERED.**

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED: July 20, 2005