# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
### WESTERN DIVISION

| | |
|---|---|
| **MICHAEL D. VAN DEELEN,** ) | |
| ) | |
|       **Plaintiff.** ) | |
| ) | |
| **v.** ) | **Case No. 04-989-CV-W-GAF** |
| ) | |
| **CITY OF KANSAS CITY, MISSOURI,** ) | |
| **et. al.,** ) | |
| ) | |
|       **Defendants.** ) | |

## ORDER

Presently pending before the Court is the imposition of sanctions, sua sponte, against the Plaintiff, Michael D. Van Deelen ("Van Deelen"). On March 2, 2006, Van Deelen was ordered to show cause as to why he should not be sanctioned for his egregious conduct throughout the course of this litigation. (Doc. #134). On March 8, 2006, Van Deelen filed a response to the Court's order to show cause. (Doc. #136). Having thoroughly reviewed the transcript in this case, the Court finds that pursuant to the Court's inherent authority, sanctions are warranted against Van Deelen to deter him from future abuses of the judicial process.

## I.     Facts

The above-captioned case was tried from February 21, 2006 through February 28, 2006 before the Honorable Gary A. Fenner, United States District Court Judge. The question before the Court was whether the City of Kansas City's residency policy was unconstitutionally vague and ambiguous. On March 2, 2006, this Court found that Van Deelen, who appeared before the Court pro se, had failed to prove his claim. (Doc. #134). The Court found that the City's residency policy was "clear and unambiguous" and was

"consistently applied" throughout Van Deelen's employment with the City. Id. The Court further found that the Defendants were shielded from liability under the doctrine of official immunity because their conduct did not violate "clearly established constitutional rights of which a reasonable person would have known." Id.

Although proceeding pro se, Van Deelen demonstrated his knowledge of the Federal Rules of Civil Procedure and Evidence and the Rules of this Court. However, Van Deelen failed to comply with general rules governing proper courtroom decorum and respect for the Court and the judicial proceedings which he had initiated. Throughout the trial Van Deelen repeatedly interrupted and argued with the Judge, counsel for the City and numerous witnesses. Van Deelen presented a voluminous amount of cumulative and irrelevant evidence wasting valuable judicial resources. His flippant and disrespectful remarks impeded the efficient resolution of his constitutional claims. Additionally, and perhaps most offensive, Van Deelen fabricated evidence to support his claims.

Van Deelen began by calling Linda Wales, a former employee in the City's Information Technology Department ("ITD"), to testify. (Trial Tr. 9:8-9). Van Deelen proceed to argue with Ms. Wales about the definition of "domicile." (Trial Tr. 23:21-25:4). After Ms. Wales told Van Deelen that it "doesn't take a genius to figure out" the definition of "domicile," Van Deelen stated that they "don't need to be arguing" and he was "not trying to be argumentative" by repeatedly asking her to define "domicile." Id. Van Deelen again argued with Ms. Wales about the use of the word "move" in a document given to Van Deelen when he was hired informing him that he had to "move" within the City limits within the next nine months. (Trial Tr. 28:16-30:20).

Van Deelen then called Mary Miller, a current ITD employee, to the stand and questioned her about the critical nature of his job. (Trial Tr. 57:4-5). When Torczon challenged the relevancy of evidence

2

that Van Deelen had a "critical job," the Court told Van Deelen that no one was disputing his assertion that he had an "important job" and that he didn't need to present any further evidence on this point. (Trial Tr. 79:23-81:25). Van Deelen proceeded to argue with the Court asserting that he was not trying to establish the importance of his position, but rather that Ms. Miller had waived the residency policy with respect to him. Id. The Court reminded Van Deelen that Ms. Miller had not testified that she had waived the residency policy with respect to him and reminded him that no one disputed that he had an important job. Id. Van Deelen responded, "I understand that, Judge. I didn't realize we were going to argue. It's just a simple document and that's fine." Id. The Court sustained the relevancy objection and Van Deelen concluded his examination of Ms. Miller. Id.

John Thigpen, the City's Human Resources Director during Van Deelen's employment, was then called to testify. (Trial Tr. 84:11-12). Counsel for the City interrupted Van Deelen's examination of Mr. Thigpen to request an exhibit number and told him to "speed it up." (Trial Tr. 93:3-11). Van Deelen asked the Court to instruct Torczon to address him through the Court rather than "helping [him] with [his] case." Id. The Court instructed Van Deelen to "present [his] case." Id. Counsel for the City again attempted to assist Van Deelen in his examination of Mr. Thigpen by informing him of the location of an exhibit he was searching for. (Trial Tr. 94:2-10). When Van Deelen complained to the Court, the Court responded, "It seems to me that's the document you are looking for." Id. To which Van Deelen retorted, "[s]he did not help me." Id.

Van Deelen proceeded to question Mr. Thigpen about City Ordinance § 2-972. Counsel for the City offered that the City was willing to stipulate that City Ordinance § 2-972 had been codified. (Trial Tr. 140:22-143:1). The following exchange ensued:

3

| | |
|---|---|
| Torczon: | We will stipulate to that. |
| Van Deelen: | Would you please address the court. |
| The Court: | Mr. Van Deelen, I have been patient with you and I am going to try to be patient but you are doing a lot of things you really don't need to do that aren't really moving your case forward . . . If she is willing to stipulate to a particular document I would ask you do that so we don't use more time than is necessary. |
| Van Deelen: | The problem is, Judge, you know I am not a lawyer and I would rather take pains taking time to get it right. |
| The Court: | If I need to I will give you a time limit and I will tell you how much time you have to complete something. If you want to waste your time in the process of doing that I will let you do it, but if you want to know what I believe is important to be heard and what I think may be determinative, in this case you better listen to what I have to say. |
| Van Deelen: | I am more than happy to do that. |
| The Court: | Apparently not. You move ahead. And we will see what it goes. |
| Van Deelen: | I am not trying to make the court upset but at the same time to me this is highly relevant because the problem is – |
| The Court: | It may be highly relevant to you. If I say it's not relevant, then you are not going to be able to admit it. Now if you believe I am wrong you have the right to appeal and you have the right to ask my determination of what is relevant and what is not relevant in your case be reviewed by someone else. |
| Van Deelen: | I hope we don't get that far, Judge. Are you saying you don't think it's relevant? |
| The Court: | I am saying if she is willing to stipulate to it, accept her stipulation and move on. |
| Van Deelen: | What was the stipulation. |
| Torczon: | This is codified as an ordinance. |
| Van Deelen: | I am not talking about that. I am talking about the fact I was terminated for violating 981023. That ordinance does not contain the language. |
| The Court: | I understand that. I totally understand that. |
| Van Deelen: | Should we move on. Okay, sorry, Judge. I am not trying to make you mad. The last person I want to make mad is you in this courtroom today. I guess since they have agreed to stipulate to its existence I move to admit Plaintiff's 8. |
| Torczon: | No objection. |
| The Court: | Received. |

4

(Trial Tr. 140:22-143:1). Exchanges like this illustrate Van Deelen's refusal to cooperate with the good faith efforts of opposing counsel and the Court to expedite the proceedings. In an effort to further prolong the proceedings and waste judicial resources, Van Deelen offered vast amounts of cumulative and irrelevant evidence. (*See* Trial Tr. 151:9-11, 152:14-20, 154:1-3; 156:2-158:11). The Court, frustrated with the pace of the proceedings, warned Van Deelen prior to taking a recess:

> You know, Mr. Van Deelen, I don't have four days to sit here for you to flounder around trying to present your case and I am telling you what I want to hear. If you don't want to give it to me then you don't want to give it to me. But I am telling you what is important in my thought process in deciding your case.

(Trial Tr. 158:12-18).

When the Court reconvened, the Judge attempted to determine under which version of the residency policy Van Deelen was terminated. The City amended its residency policy following Van Deelen's termination, but prior to his appeal of his termination to the Human Resources Board.[1] In hearing the party's arguments on this issue, the Court observed: "I guess to some extent it would be a pretty hollow victory if you were to prevail and had a ordinance no longer in effect under the issue of damages." (Trial Tr. 161:2-4). To which Van Deelen responded, "I will take it." (Trial Tr. 161:5).

Following this discussion with the Court, Van Deelen resumed questioning Mr. Thigpen. Rather than eliciting facts to support his arguments, Van Deelen would offer speculative arguments in support of his position as this exchange illustrates:

---

[1]The City's residency policy was codified in City Ordinance § 2-972. The prior version of the ordinance was referred to as 981023 throughout the trial. The amended version of the ordinance was referred to as 021200.

5

| Van Deelen: | How would an employee know in, how would, does the human resources department ensure that all employees across the city are treated equally as far as the residency requirement if there is no documentation and if you are doing things like leaving it up to them to decide, if they even know there is a GIS department, to call them and see where they live. What kind of mechanism does the human resources have in place to make sure everybody is treated equally? |
| --- | --- |
| Thigpen: | I don't understand the question. People are treated equally because the residency applies to all employees. |
| Van Deelen: | People are treated equally when the ordinance is applied equally. |
| The Court: | Mr. Van Deelen, I know you don't like to be interrupted. Unfortunately, you are in a situation [where] my opinions about this are going to be determinative and you can't just speculate that people were treated disparately. You can't just speculate there was disparate treatment because you want to argue people didn't understand what being a resident of Kansas City was. That's not sufficient to establish your burden here. |
| Van Deelen: | I am asking him how the human resources Department guaranteed they were being treated equally. |
| The Court: | He has already said as far as he is concerned the term residence was clearly understood by the employees of the city. Nobody ever had a problem with it. Nobody ever questioned him about it. I don't have to go out and conduct some survey or interview everybody and make certain that they do know and they do understand that and they are in compliance. Now if there is some evidence of some wide-spread problem or some confusion among employees and they don't take steps to correct that, that's a different story but you want to just speculate nobody knew what residence meant and Mr. Thigpen says that wasn't the case. |
| Van Deelen: | He's guessing, sir. |
| The Court: | He's speaking from what his experience was. Now you have the opportunity to prove what he says is wrong which you are not going to prove through him because he's telling you what his testimony is. You can argue with him for a long time if you want but you have already been arguing with him for a good part of the day and I haven't seen his position change. |

(Trial Tr. 175:25-177:19).

6

Throughout the trial Van Deelen was uncooperative with the Court and opposing counsel with respect to calling witnesses. At the end of the first day of trial, Van Deelen refused to cooperate with Counsel for the City to ensure the appearance of Margaret Evans:

| | |
|---|---|
| Torczon: | Margaret Evans was under subpoena and we just want to know if she needs to come back. |
| The Court: | Are you going to need Margaret Evans tomorrow, Mr. Van Deelen? |
| Van Deelen: | She has agreed to call me tonight. Absent the fact I have her number she has my number. If we can't get in touch she needs to be back. |
| Torczon: | She has not agreed to call through me. If he needs her it appears to me – |
| Van Deelen: | I am trying to answer you but I am constantly interrupted. I spoke to Mrs. Evans before she left. |
| The Court: | Don't keep doing that. Don't put her down. Just answer my questions, okay. Answer my questions. Don't keep denigrating opposing counsel or counsel for the City, not opposing counsel but counsel for the City. |
| Van Deelen: | I am not attempting to do that she interrupted. |
| The Court: | You are and I am telling you don't denigrate Ms. Torczon in the responses you make. |
| Van Deelen: | I am saying I appreciate not being interrupted. |
| The Court: | Do you want to argue. It's late in the day and if you want to get in an argument we will do that. Otherwise you accept what I tell you and you move on. You got it. That's what I want you to do. You understand that? |
| Van Deelen: | I understand it. |
| The Court: | All right, you accept what I tell you and you move on. Now what is the situation with Mrs. Evans. |
| Van Deelen: | Do we have any rules about interrupting. I just want to know if there is. I don't want to interrupt her and I don't want to interrupt you. |
| The Court: | Yes, there is a rule[:] do not interrupt me. What is the situation with Mrs. Evans? |
| Van Deelen: | The situation is I spoke to her and she has agreed to call me tonight. |
| The Court: | Apparently Ms. Torczon has spoken with her and she's not inclined to call Mr. Van Deelen. |
| Ms. Reed: | Earlier in the case before Ms. Evans was dismissed I had represented her. So I have been the city's contact person with Margaret Evans in getting her in response to the subpoena. I had several conversations with her Friday and today. |
| The Court: | Do we have to take half an hour. |

| | |
|---|---|
| Ms. Reed: | She doesn't want to call Mr. Van Deelen. |
| The Court: | She doesn't want –. |
| Ms. Reed: | That is right. |
| The Court: | She doesn't want to call you. Do you need her here tomorrow or not? |
| Van Deelen: | Yes. |
| The Court: | Tomorrow morning, tomorrow afternoon, what? |
| Van Deelen: | Judge I guess I would like to respond to something that is not the truth that has been told you. And if you don't want me to, fine. |
| The Court: | I don't want you to. |
| Van Deelen: | I need her here. I would need here [sic]. I don't know how long it is going to take. I am through with Mr. Thigpen. He's the longest witness I have. |
| The Court: | So we say ten thirty tomorrow morning. |
| Van Deelen: | No, I would say tomorrow afternoon because if she would call I would save that trouble if she would call. |
| The Court: | I am not going to make her call you. They say she doesn't want to. |
| Van Deelen: | She can call Ms. Torczon. In the absent [sic] of making it easier on herself show up tomorrow afternoon. |
| The Court: | Have her here at one o'clock tomorrow. All right. Thank you. You are excused. |

(Trial Tr. 205:11-208:7). This exchange not only illustrates Van Deelen's unwillingness to cooperate with Counsel for the City and the Court, but also his lack of candor. Van Deelen repeatedly argued with the Judge over the most mundane issues insisting that the trial be conducted pursuant to his own personal preferences rather than the Court's orders.

Van Deelen appeared for the second day of trial with a renewed interest in arguing with the Judge over the appearance of his witnesses prompting the following exchange:

| | |
|---|---|
| The Court: | Thank you. You can all be seated. Ms. Torczon, are you ready for your cross-examination? |
| Van Deelen: | I have one matter. I had subpoenaed Brian Loopey and he came yesterday morning and I told him to return this morning. He is not here. I have to take necessary steps – |
| The Court: | Do you know if he is coming? |
| Torczon: | He called me twice last night and after discussions about Margaret Evans I told him I would call him this afternoon. |

8

| Van Deelen: | He's my witness and I asked him to be here this morning to be used as a witness. |
|---|---|
| The Court: | He will be here if we have to wait for him we will wait for him but don't you have other witnesses you can proceed with, Mr. Van Deelen. |
| Van Deelen: | I guess, Your Honor. The problem I have is that he's under my subpoena. |
| The Court: | All right, do not argue with me about this. I made a decision. Do not argue with me. |
| Van Deelen: | I am not arguing. |
| The Court: | You are. Do not argue with me. I am not here to babysit with you. I am not here for you to nit-pick over every little detail. You will proceed in the fashion that I tell you to proceed. All right, if you have a problem you address it to me. I will decide it. Now what is the next issue? |
| Van Deelen: | I move to have Ms. Torczon cited for contempt of court for tampering with my witness. |
| The Court: | Your motion is denied. |

(Trial Tr. 210:1-211:5). Mr. Thigpen then took the stand for his cross-examination. (Trial Tr. 211:4-7).


Following Mr. Thigpen's cross-examination, Van Deelen called Gail Roper, the Chief Information Officer/Director of ITD during Van Deelen's employment, as his next witness. (Trial Tr. 227:20). Van Deelen continued to argue with the Judge throughout his examination of Ms. Roper. (Trial Tr. 235:17-236:14; 237:17-23; 335:8-336:22). Van Deelen unduly delayed the proceedings by misplacing exhibits and then arguing with Counsel for the City about the location of the exhibits (Trial Tr. 238:12-239:18), focusing on irrelevant evidence and details (Trial Tr. 235:17-236:14; 335:8-336:22), and offering cumulative evidence (Trial Tr. 241:11-24). Additionally, Van Deelen argued with Ms. Roper (Trial Tr. 276:2-3) and misstated and misconstrued her testimony in an effort to prove his case (Trial Tr. 244:3-245:23, 257:23-258:21).

Van Deelen questioned Ms. Roper about an inter-departmental memo she purportedly signed waiving the City's residency requirement with respect to Van Deelen. (Trial Tr. 252:14-257:9). Ms.

9

Roper testified that her signature had been transposed to a document that she did not write. (Trial Tr. 253:10-12). Ms. Roper testified that she knows she did not write the memo because she generally does not write memos to staff members, she usually signs documents using her middle initial, the format of the memo is inconsistent with the format used in her office, and she generally uses the salutation "regards" rather than "sincerely." (Trial Tr. 254:15-255:10).

This memo was allegedly sent to Gary O'Bannon and Mary Miller. Mr. O'Bannon testified that he had not seen the memo prior to the filing of this lawsuit. (Trial Tr. 868:16-24). Ms. Miller also testified that she had not seen the memo prior to the present litigation. (Trial Tr. 870:1-871:5).

Van Deelen also questioned Ms. Roper about a letter which he authored and allegedly sent to her following his termination. (Trial Tr. 257:10-262:1). Ms. Roper testified that she did not remember receiving the letter. (Trial Tr. 257:23-260:4). The letter purportedly verifies the alleged waiver of the residency requirement with respect to Van Deelen. (Trial Tr. 261:15-20).

By the conclusion of the trial, the Court was convinced that Van Deelen had fabricated the memo Ms. Roper allegedly drafted waiving Van Deelen's compliance with the City's residency policy. The Court was also persuaded that the letter that Van Deelen drafted and allegedly sent to Ms. Roper had never been received by Ms. Roper. Accordingly, the Court concluded that the alleged waiver of the City's residency policy with respect to Van Deelen had been fabricated by Van Deelen.

Following Van Deelen's examination of Ms. Roper, Margaret Evans, a member of the Human Resources Board which reviewed Van Deelen's termination, was called to testify. (Trial Tr. 322:10). The Court repeatedly tried to get Van Deelen to focus on the constitutional question before it rather than presenting evidence to establish that he was wrongfully terminated. This is best illustrated by two

10

exchanges. The first occurred when Van Deelen was questioning Ms. Evans on re-direct about the ordinance that was presented to the Human Resources Board (021200) which was different from the ordinance which the parties agreed Van Deelen was fired for violating (981023):

| | |
|---|---|
| The Court: | Mr. Van Deelen, you agreed yesterday that you were challenging 981023. |
| Van Deelen: | Yes, I did. |
| The Court: | So what relevance does this have? |
| Van Deelen: | The relevance is the defendants terminated me for violating one ordinance, they weren't even aware of it. |
| The Court: | You are not challenging, this is not a wrongful termination hearing here. You are challenging the constitutionality of 981023. That was discussed yesterday. You agreed to that. That's what we are talking about. |
| Van Deelen: | Your Honor, I think we have a difference of things and that's why I want to bring you a case or two as we go but I am challenging the policy not the order [sic] ordinance. |
| The Court: | Just because they got it wrong doesn't mean it's unconstitutional. |
| Van Deelen: | There is a difference and I will make plenty of argument as we proceed, difference of finding a policy unconstitutional. |
| The Court: | I understand the ordinance the HR Board had before them at the time they terminated you was 021200. I understand that. |
| Van Deelen: | Okay. But the only thing I was trying to do now, Mrs. Torczon introduced testimony that appeared I was agreeing to check and see if that ordinance was the proper one and that is not in fact the testimony that was given. If she will stipulate to that I would be happy to sit down. |
| The Court: | I don't think she will stipulate. |
| Torczon: | She re-read the testimony so it's in the record what was said. |
| Van Deelen: | Do you stipulate to the fact I did not say – |
| Torczon: | No. |

(Trial Tr. 335:18-21).

Despite the Court's warning regarding the introduction of irrelevant evidence, Van Deelen called Brian Loopey to the stand and began questioning him about the surveillance he performed on Van Deelen. Again, the Court instructed Van Deelen to refrain from proceeding to elicit irrelevant testimony:

| | |
|---|---|
| The Court: | Once again if they got it wrong that's a different question. I mean if you did not live in Kansas and you in fact lived in Missouri as your permanent |

11

|              | residence and Kansas City made a mistake in terminating you that's your wrongful termination proceeding. We are here talking about the constitutionality of this ordinance and how it was applied to you. Now what they did in the course of their investigation, they concluded you were a resident of Kansas. And so that's what we are dealing with here. I do not have before me whether that question or that decision was made rightly or wrongly. That's not before me. |
|--------------|----|
| Van Deelen:  | I understand, Judge. What I am trying to show simply they have a list, they have a checklist of things to check. |
| The Court:   | It sounds like you are getting into the detail of everything this man did in the course of investigating you. If you want to talk about the policies and you want to continue your effort to show that the policies were unable to be interpreted and applied inconsistently [sic] in relation to you, you can do that but we are not here to reconsider whether you were wrongfully terminated. And you know what, I am not going to tell you, I am just going to start telling you to move on. You better understand, okay. |
| Van Deelen:  | I do understand. I don't think you understand what I am trying to do and I am trying to do exactly what you just said. |
| The Court:   | I understand what you are trying to do. |
| Van Deelen:  | A checklist they have – let me continue. |
| The Court:   | Move on. |

(Trial Tr. 342:18-344:1).

At the conclusion of Mr. Loopey's direct testimony, Counsel for the City indicated that she did not have any questions for Mr. Loopey and the Court proceeded to excuse Mr. Loopey. (Trial Tr. 349:14-23). Van Deelen contested the Court's excusal of Mr. Loopey:

| Van Deelen:  | I reserve the right to recall him as rebuttal. |
|--------------|----|
| The Court:   | You didn't get anything out of him just now. You tell me what you want to recall him for. |
| Van Deelen:  | I want to recall as rebuttal. |
| The Court:   | For what purpose? |
| Van Deelen:  | I won't know. |
| The Court:   | You are excused, Mr. Loopey. You are free to go and you will not be recalled. |
| Van Deelen:  | I can't recall him? |
| The Court:   | That's what I said. You won't tell me why you want to recall him. |
| Van Deelen:  | I want to recall him to rebut testimony. |

12

| The Court: | I said no. |
| Van Deelen: | Okay, as long as it's on the record. |
| The Court: | As long as you understand what no means. |
| Van Deelen: | I certainly do. |
| The Court: | Good. |

(Trial Tr. 349:24-350:19).

Van Deelen proceeded to call Beth Lacey as a witness. (Trial Tr. 350:22-23). During his examination of Ms. Lacey, Van Deelen continued to focus on irrelevant matters and offered cumulative evidence. (Trial Tr. 357:25-359:9; 366:25-367:2; 378:9-23). When the Court was attempting to discern the relevance of certain testimony, Van Deelen interrupted the Judge and indicated that he would not comply with the Judge's rulings:

| The Court: | . . . What are you trying to establish here, about the ordinance? That's a question or no question. |
| Van Deelen: | I am trying to establish what the terms were that she applied to the residency policy while I was employed. |
| The Court: | She said her - - |
| Van Deelen: | Judge, if you would let me continue. I have deposition testimony. |
| The Court: | You know what, I have been letting you continue for two days and you are making very little progress, Mr. Van Deelen. |
| Van Deelen: | Well, sorry. |

(Trial Tr. 358:22-359:9). Van Deelen proceeded to argue with the Judge about the law governing his constitutional claim and the relevancy of the evidence he was offering in support of his claim. (Trial Tr. 360:13-361).

Although each witness Van Deelen had called had testified that residence means where a person lives (Trial Tr. 360:19-23), Van Deelen attempted to misconstrue the testimony of these witnesses to convince the Court that no one understood the meaning of "residence" in the City's residency policy. (Trial Tr. 360:13-361:22). The following exchange between Van Deelen and the Judge ensued:

13

| | |
|---|---|
| Van Deelen: | I am just trying to show every person in the world, Judge, applied terminology to what the residence – |
| The Court: | I bet you probably are trying to tell me how every person in the world interprets it. |
| Van Deelen: | I just have a few more witnesses. I am not sure if I am going to ask anybody else this question but to me it's highly relevant. |
| The Court: | I hope not because you have already asked it of too many people and you have gotten the same answer every time. |
| Van Deelen: | Let me ask, is that something you don't think is relevant? |
| The Court: | I don't think that the fact that people had an understanding of the legal terminology of residence is any indication that it was vague. I believe that the evidence to this point shows that there was a consistent definition of residence accepted by the city employees and HR and ITD and that they applied that definition in a consistent fashion. And definition of residence was where a person lives and there were a variety of things they looked at in making those determinations. But those people in ITD did not make that ultimate determination and it was up to the HR Board to determine if a person was in compliance or not. And if there was a general understanding of what residence meant, then it's not inconsistently applied. |
| Van Deelen: | It is certainly inconsistently applied. |
| The Court: | You argue it is. The difficulty with you, Mr. Van Deelen, is you do not accept reason or reality. And you want to argue everything to the extreme. And that is not going to accomplish what you are seeking to accomplish in this action. And it is to some extent not productive for me to discuss these things with you because you do not accept them. And so we will proceed and you can go ahead and put your case on and continue with whatever cause it is that you are taking up in the course of this case. |
| Van Deelen: | Part of the problem, I was not given a chance to do an opening statement and I was quite prepared to. |
| The Court: | Okay, I am done talking to you. Go on asking the witness your questions. |
| Van Deelen: | Thank you. |
| | I might as well just quit because my whole thing I am going to show that there is not one person, Kansas City employee, planet earth that had any idea what these words were that were being applied to their residency. |
| The Court: | You are trying to establish that and they all say it means where a person lives and their understanding where a person lives where their home – |
| Van Deelen: | Nobody ever told anybody that. |
| | Judge, I am not trying to make you mad. I am sorry. I already have, but I don't think I need to show that I was treated differently. I need to show – |

14

| The Court: | That's up to you. We are not here arguing your case right now. If you want to continue your evidence, proceed. |
|---|---|
| Van Deelen: | Thank you, Judge. |

(Trial Tr. 360:23-364:7).

After Van Deelen wasted the Court's time by fishing around for relevant evidence from Ms. Lacey (Trial Tr. 368:8-369:16) and offering to quit entirely (Trial Tr. 370:3-14), a recess was taken and Roy Greenway was subsequently called to testify (Trial Tr. 395:19). Van Deelen proceeded to solicit irrelevant testimony from Mr. Greenway (Trial Tr. 421:13-19; 428:4-5; 428:12-17; 431:21-432:8) and misconstrue his testimony (Trial Tr. 433:13-19). At the conclusion of this portion of Mr. Greenway's testimony, Van Deelen asserted his intention to call Wayne Cauthen, City Manager for the City of Kansas City, as a witness. (Trial Tr. 449:8-458:7).

Aware of Mr. Cauthen's schedule and numerous civic responsibilities, the Court asked Van Deelen what evidence he excepted to elicit from Mr. Cauthen. Id. Van Deelen was unable to provide the Court with a coherent response, and the Court threatened Van Deelen with sanctions in the event Mr. Cauthen appeared and Van Deelen failed to elicit any relevant testimony from him. Id. An aggravated exchange ensued between the Court and Van Deelen during which Van Deelen argued with the Court, accused the Court of violating his "constitutional right to call a witness," accused the Judge of "screaming" at him and becoming "red in the face," and made an oral motion for recusal. Id. During this exchange, Van Deelen baldly and absurdly asserted that Mr. Cauthen would admit that the City's residency policy was unconstitutional. Id. Van Deelen then withdrew, but subsequently reasserted, his intention to call Mr. Cauthen, recognizing that he would be subject to sanctions if he continued to waste the time of the Court and the witnesses. Id.

15

When the Court reconvened the following morning for the third day of trial, the Judge denied Van Deelen's written motion to recuse stating that the allegations contained therein were false. (Trial Tr. 460:1-5). The Court notified Van Deelen that his examination of Mr. Cauthen would be limited to thirty minutes and if Van Deelen had used this time productively and additional time was necessary, the Court would consider granting Van Deelen additional time to question Mr. Cauthen. (Trial Tr. 461:7-12). The Court also limited Van Deelen's direct examination of all additional witnesses to one hour and no more time for redirect examination than was taken on cross examination because Van Deelen had consistently asked repetitive questions of many of the witnesses in an effort to establish facts that were already in evidence. (Trial Tr. 461:13-20). Not surprisingly, Van Deelen argued with the Judge about this time limitation asserting that the Judge had "changed the rules." (Trial Tr. 461:24-462:22).

Van Deelen then called Mr. Cauthen to the stand to question him about the residency policy in effect at the time of Van Deelen's termination. Mr. Cauthen testified that he did not become City Manager until after Van Deelen was terminated and his administrative review of Van Deelen's termination was conducted by one of his staff members. (Trial Tr. 463:12-465:7). Mr. Cauthen further testified that he was not involved in interpreting and applying the City's residency policy as he had delegated this duty to the City's Human Resources Manager. (Trial Tr. 466:16-25). Mr. Cauthen asserted that he was not familiar with the City's residency policy during Van Deelen's employment with the City as Mr. Cauthen was not employed by the City at that time. (Trial Tr. 467:18-468:10). Mr. Cauthen stated that he didn't know what ordinance Van Deelen was terminated for violating. (Trial Tr. 468:19-25). Ultimately, Van Deelen failed to elicit any probative testimony from Mr. Cauthen.

16

Following the third day of trial, Van Deelen filed a civil complaint against Judge Fenner alleging various violations of his constitutional rights. *See* <u>Van Deelen v. Fenner</u>, Case No. 4:06-CV-162-HFS. The next day, Van Deelen dismissed his claims against Judge Fenner. <u>Id</u>.

In the remaining days of the trial Van Deelen continued to mischaracterize the testimony of witnesses (Trial Tr. 516:10-18; 517:1-11; 629:16-630:6; 632:18-22), disrespect witnesses (Trial Tr. 656:4-15), and call witnesses by the wrong name (Trial Tr. 474:25-475:6; 475:25-476:2; 479:10-17). Van Deelen was unprepared to call scheduled witnesses (Trial Tr. 482:15-483:4) and was unprepared to testify himself (Trial Tr. 791:8-20). Van Deelen continued to offer irrelevant and cumulative evidence (Trial Tr. 507:9-15; 561:1-4; 591:15-24; 592:23-593:3; 730:5-18, 731:11-25, 743:5-8), reject the authority of the Court (Trial Tr. 630:18-631:5) and argue with opposing counsel (Trial Tr. 478:4-9; 515:6-9; 634:17-23; 715:5-13). Although Van Deelen had fewer opportunities to argue with the Court as the Judge came to recognize the futility in instructing Van Deelen on the law and the evidence necessary to prove his claims, Van Deelen managed to be uncooperative when given the opportunity. (Trial Tr. 615:9-617:6; 711:16-713:16; 733:9-19).

Unfortunately, the transcript does not reflect the amount of time that was wasted while Van Deelen searched for exhibits or formulated his next question. On the final day of trial, the following exchange occurred wherein the Court censured Van Deelen for wasting its time:

| | |
|---|---|
| The Court: | Mr. Van Deelen, if you are not ready to proceed, I am going to excuse Mr. Greenway. |
| Van Deelen: | I beg your indulgence, these exhibits constantly get shuffled. |
| The Court: | I sit and wait constantly for you to find your exhibits. |
| Van Deelen: | And the defense as well, Judge. Here is the exhibit. |
| The Court: | You have to have a response to everything, don't you, sir? |
| Van Deelen: | I can't hear you. |

Case 4:04-cv-00989-GAF   Document 151   Filed 07/24/06   Page 17 of 34

| The Court: | You have to have a condescending response to everything. |
| Van Deelen: | Judge I would like to make another oral motion you recuse yourself. You are obviously bias[ed] against me in this case? [sic] |
| The Court: | Your motion is denied. |
| Van Deelen: | I will re-file. I am sorry I intimidate you. It's working both ways, believe me. |
| The Court: | All right, if you are not ready to proceed - - |
| Van Deelen: | Mr. Greenway, would you please find a thumbnail sketch . . . |

(Trial Tr. 789:4-25).

Following closing arguments, Van Deelen asked the Court for permission to make a statement unrelated to his case. (Trial Tr. 889:18-24). Van Deelen, recognizing that his conduct throughout the trial could be characterized as disrespectful and harassing, gave the following statement:

> I just wanted to state, Judge, that during these proceedings you and I have been butting heads and I want to let you know none of that was meant to be disrespectful of the court. I wanted you to know that, Judge, nothing was meant to be done other than to protect my rights pursuant to this litigation. Thank you.

(Trial Tr. 889:25-890:5). Regardless of this statement to the contrary at the close of his case, the Court finds that the facts detailed above reveal that Van Deelen frequently made unnecessary, irrelevant, argumentative and condescending comments thereby demonstrating a complete lack of respect and decorum towards the Court, Counsel for the City and his own witnesses. Van Deelen exhibited a proclivity to abuse the legal process by his conduct throughout this litigation and sanctions are warranted to deter future abuses of the judicial process.

**II.      Sanction**

The Court finds that its inherent authority, recognized by the Supreme Court in Chambers v. NASCO, Inc., 501 U.S. 32 (1991), empowers it to impose sanctions on Van Deelen to deter him from future abuses of the judicial process. The Court finds that Van Deelen filed this lawsuit in bad faith, with

18

the intention of harassing the City and its employees. Van Deelen's fabrication of evidence together with his disrespectful and argumentative conduct throughout the course of the trial impeded the efficient resolution of his constitutional claims. Any of such conduct, standing alone, is sufficient to warrant sanctions.

To prevent Van Deelen from engaging in such conduct in the future, the Court HEREBY IMPOSES a monetary sanction on Van Deelen in the form of attorney's fees to be paid to the City in the amount of $6,000. Furthermore, Van Deelen is HEREBY ENJOINED from filing future pro se litigation against the City, its agents and employees. On all pending litigation against the City, its agents and employees or against any entity or individual arising out of Van Deelen's termination or any matter relating thereto, Van Deelen is HEREBY ORDERED to secure and maintain throughout the litigation the entry of appearance of an attorney licensed to practice in the appropriate jurisdiction within 30 days of the date of this Order or dismiss the action. Imposition of these sanctions is supported by Supreme Court precedent and the law of the Eighth Circuit, as set forth below.

## III. Legal Authority and Analysis

### A. Inherent Authority of the Court to Impose Sanctions for Conduct Which Abuses the Judicial Process

It is well-settled in the Eighth Circuit that a "district court is vested with discretion to impose sanctions upon a party under its inherent disciplinary power." *See* Bass v. General Motors Corp., 150 F.3d 842, 851 (8th Cir. 1998); Sylla-Sawdon v. Uniroyal Goodrich Tire Co., 47 F.3d 277, 280 (8th Cir. 1995); Dillon v. Nissan Motor Co., Ltd., 986 F.2d 263, 267 (8th Cir. 1993). "These powers are 'governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs

19

so as to achieve the orderly and expeditious disposition of cases.'" <u>Chambers</u>, 501 U.S. at 43 *quoting* <u>Link v. Wabash R.R. Co.</u>, 370 U.S. 626, 630-31 (1962). "Because of the potency of inherent powers, '[a] court must exercise its inherent powers with restraint and discretion, and a primary aspect of that discretion is the ability to fashion an appropriate sanction.'" <u>Plaintiffs' Baycol Steering Comm. v. Bayer Corp.</u>, 419 F.3d 794, 802 (8th Cir. 2005) *quoting* <u>Harlan v. Lewis</u>, 982 F.2d 1255, 1262 (8th Cir. 1993) *citing* <u>Chambers</u>, 501 U.S. at 44-45. "Over the years, the Supreme Court has found inherent power to include the ability to dismiss actions, assess attorneys' fees, and to impose monetary or other sanctions appropriate 'for conduct which abuses the judicial process.'" <u>Harlan</u>, 982 F.2d at 1259 *quoting* <u>Chambers</u>, 501 U.S. at 43-45. "[W]hereas each of the other mechanisms [outlined in the Federal Rules of Civil Procedure] reaches only certain individuals or conduct, the inherent power extends to a full range of litigation abuses. At the very least, the inherent power must continue to exist to fill in the interstices." <u>Chambers</u>, 501 U.S. at 46.

> **B.**   **Imposition of Monetary Sanctions in the form of Attorney's Fees Pursuant to the Court's Inherent Authority**

In <u>Chambers</u>, the controlling authority on the imposition of sanctions pursuant to the inherent powers of the Court, the Supreme Court found that "a court may assess attorney's fees when a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" <u>Chambers</u>, 501 U.S. at 45-46 *quoting* <u>Alyeska Pipeline Service Co. v. Wilderness Society</u>, 421 U.S. 240, 259 (1975). "If a court finds 'that fraud has been practiced upon it, or that the very temple of justice has been defiled,' it may assess attorney's fees against the responsible party . . . as it may when a party 'shows bad faith by delaying or

20

disrupting the litigation or by hampering enforcement of a court order.'[2]" *See* <u>Chambers</u>, 501 U.S. at 46 (internal citations omitted). The Supreme Court concluded:

> The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of 'vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy.'

<u>Chambers</u>, 501 U.S. at 46 *quoting* <u>Hutto v. Finney</u>, 437 U.S. 678, 689, n. 14 (1978).

In <u>Harlan v. Lewis</u>, 982 F.2d 1255 (8th Cir. 1993), the Eighth Circuit affirmed a district court's[3] application of its inherent powers to impose a $5,000 monetary sanction against an attorney who engaged in two unauthorized ex parte communications with nonparty treating physicians. The Eighth Circuit recognized that "the Supreme Court has found inherent power to include the ability to . . . assess attorneys' fees, and impose monetary or other sanctions appropriate 'for conduct which abuses the judicial process.'" <u>Harlan</u>, 982 F.2d at 1259 *citing* <u>Chambers</u>, 501 U.S. at 43-45. The Eighth Circuit rejected the attorney's argument that an explicit finding of bad faith is required prior to the imposition of any monetary sanction. <u>Harlan</u>, 982 F.2d at 1260. The Eighth Circuit distinguished the imposition of monetary sanctions from the assessment of attorney's fees noting that the Supreme Court stated in <u>Roadway Express, Inc. v. Piper</u>, 447 U.S. 752, 767 (1979) "that a finding of bad faith 'would have to precede any sanction under the court's

---

[2]The Supreme Court noted that "the bad-faith exception [to the American Rule prohibiting fee-shifting] resembles the third prong of Rule 11's certification requirement, which mandates that a signer of a paper filed with the court warrant that the paper is 'not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.'" <u>Chambers</u>, 501 U.S. at 46, fn 10. Later in this Order, the Court will discuss how the monetary sanctions imposed against Van Deelen could alternatively be imposed pursuant to Fed. R. Civ. P. 11.

[3]United States District Court for the Eastern District of Arkansas, Judge Henry Woods presiding.

Case 4:04-cv-00989-GAF    Document 151    Filed 07/24/06    Page 21 of 34

inherent powers'" but that this statement was limited to the assessment of attorney's fees. Harlan, 982 F.2d at 1260. In Harlan, the Eighth Circuit apparently limited the bad faith requirement to the assessment of attorney's fees as a sanction imposed pursuant to the court's inherent authority.[4] Id.

In Nielson v. Trans World Airlines, Inc., 95 F.3d 701, 702 (8th Cir. 1996), the Eighth Circuit affirmed a district court's[5] assessment of attorney's fees against four plaintiffs as a sanction imposed pursuant to the court's inherent power. The district court found that "the plaintiffs pursued this lawsuit in bad faith and for no purpose other than to harass and badger TWA." Nielson, 95 F.3d at 702. The Eighth Circuit found that a district court has the authority to assess attorney fees under its inherent power "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Nielson, 95 F.3d quoting Dillon, 986 F.2d at 266. The Eighth Circuit further found that the district court did not abuse its discretion "in assessing $20,000 in attorney fees against plaintiffs, after finding they acted in bad faith and for an improper purpose." Nielson, 95 F.3d at 702.

This Court has the inherent authority, according to the Supreme Court's holding in Chambers, to assess attorney's fees against Van Deelen in the present case. There is ample evidence in the transcript revealing Van Deelen's bad faith in filing and pursuing his constitutional claims against the City and its employees. As detailed above, Van Deelen abused the judicial process by fabricating evidence to create a genuine issue of material fact for trial. He wasted the time and efforts of numerous City employees,

_____

[4]The Court further held that the "bad faith" requirement cannot be construed to extend "to every possible disciplinary exercise of the court's inherent power, especially because such an extension would apply the requirement to even the most routine exercises of the inherent power." Harlan, 982 F.2d at 1260.

[5]United States District Court for the Western District of Missouri, Judge Dean Whipple presiding.

22

including the City Manager, by calling them to testify and then soliciting irrelevant and cumulative evidence from them. Furthermore, Van Deelen's propensity for arguing with the Court and counsel for the City impeded the expeditious resolution of his claims. Accordingly, the City is entitled to be compensated for a portion of the expenses it incurred as result of Van Deelen's obstinacy. As the transcript reveals Van Deelen's vexatious, wanton and oppressive conduct throughout the course of the trial, the Court will impose monetary sanctions against him in the form of attorney's fees pursuant to the Court's inherent power to police itself.

### C. Enjoining Future Pro Se Litigation Against the City and its Employees Pursuant to the Court's Inherent Authority

It is well-settled that this Court has the discretion to craft and impose sanctions to deter litigants from engaging in "conduct which abuses the judicial process." Chambers, 501 U.S. at 43-45. As identified above, courts have imposed a wide range of sanctions to discourage conduct which impedes the orderly and expeditious disposition of cases. As Van Deelen has demonstrated a desire to harass the City and its employees by filing frivolous lawsuits supported by fabricated evidence, the Court finds that its inherent authority to impose sanctions to deter litigants from engaging in "conduct which abuses the judicial process," includes enjoining Van Deelen from filing future pro se litigation against the City and its employees.

With respect to limiting "vexatious, frivolous or oppressive litigation" by enjoining a litigant from filing future lawsuits, one legal treatise has noted:

> Although litigiousness alone will not support an injunction restricting a plaintiff's filing activities, the courts have the authority to enjoin persons engaged in the manifest abuse of the judicial process, regardless of whether the threatened litigation is legal or equitable in character, or whether the vexatious litigation results from the prosecution of many suits by the same individual, or from many suits by different individuals. The courts may take creative actions to discourage hyperactive litigators so long as some access to courts is

23

allowed, such as by limiting the amount of filings a litigant may make, and prescribing conditions precedent to those filings so as to determine the propriety of a suit on a case by case basis.

42 Am. Jur. 2d Injunctions § 191 (2005).

The Eighth Circuit Court of Appeals has held that "[o]ne may not be enjoined from protecting and enforcing his rights by lawful means, unless his acts to that effect are done or threatened unnecessarily, not really for the purpose of protecting his rights, but maliciously to vex, annoy, and injure another." Kryptok Co. v. Stead Lens Co., 190 F. 767, 767, 771 (8th Cir. 1911). Nearly 80 years later, the Eighth Circuit found that litigants who have abused the judicial system may be enjoined from filing future litigation. In In re Tyler, 839 F.2d 1290, 1292 (8th Cir. 1988), the Eighth Circuit recognized that there is "no constitutional right of access to the courts to prosecute an action that is frivolous or malicious." "Frivolous, bad faith claims consume a significant amount of judicial resources, diverting the time and energy of the judiciary away from processing good faith claims." Tyler, 839 F.2d at 1292.[6] Excessive litigation imposes unnecessary burdens on, and the useless consumption of, court resources thereby increasing the public dissatisfaction and frustration with the courts. Id. Furthermore, "abusive litigation results in prolonged, repetitive harassment of defendants causing frustration and often extraordinary and unreasonable expenditures of time and money defending against unfounded claims." Id. According to the Eighth Circuit,

---

[6]The Court relies primarily upon its inherent authority, as recognized in Chambers, in enjoining Van Deelen from filing future pro se lawsuits against the City and its employees as a sanction for his abuse of the judicial system. Tyler was decided before Chambers. Therefore, the Eighth Circuit in deciding Tyler did not rely upon the inherent authority of the district courts as outlined in Chambers. However, in Tyler the Eighth Circuit recognized the authority of a district court "to control and manage matters pending before it" and the mandate of Fed. R. Civ. P. 1 in affirming the district court's order enjoining Tyler from filing future litigation.

24

"[d]efendants have a right to be free from harassing, abusive and meritless litigation" and the "federal courts have a clear obligation to exercise their authority to protect litigants from such behavior." Id. (internal citations omitted). The Eighth Circuit concluded that: "The Court may, in its discretion, place reasonable restrictions on any litigant who files non-meritorious actions for obviously malicious purposes and who generally abuses judicial process. These restrictions may be directed to provide limitations or conditions on the filing of future suits." Id. citing Phillips v. Carey, 638 F.2d 207, 209 (10th Cir. 1981). The Eighth Circuit in Tyler proceeded to affirm the district court's[7] sua sponte determination that the plaintiff should be limited to filing one new lawsuit per month pursuant to certain conditions precedent as a sanction for the litigant's repeated abuse of the judicial process. Tyler, 839 F.2d at 1291.

The Court finds that Van Deelen has filed this lawsuit against the City and its employees not for the purpose of protecting his constitutional rights, but rather maliciously to vex and annoy the City. This is best demonstrated by Van Deelen's remark that he would "take" a "hollow victory." (See Trial Tr. 161:2-6). Based on this comment it is apparent that Van Deelen was not seeking to change the City's residency policy or even to recover damages, but simply to obtain a verdict against the City. To prevent further harassment of the City and its employees by the filing of harassing, abusive and meritless litigation, the Court finds it necessary to enjoin Van Deelen from filing future pro se lawsuits against the City and its employees.

The litigation of Van Deelen's claims consumed a great deal of judicial resources as the Court considered cross-motions for summary judgment and presided over six days of trial. The trial was particularly time-consuming as the parties grossly underestimated the amount of time the trial would take,

---

[7]United States District Court for the District of Nebraska, C. Arlen Beam, Chief Judge, presiding.

Case 4:04-cv-00989-GAF    Document 151    Filed 07/24/06    Page 25 of 34

requiring the Court to re-schedule other criminal and civil matters in order to hear evidence in this case. Preventing Van Deelen from filing future pro se lawsuits against the City is necessary to preserve limited judicial resources for the processing of good faith claims.

In L.G. Ruderer v. United States, 462 F.2d 897 (8th Cir. 1972), the Eighth Circuit affirmed a limitation on future litigation similar to the limitation this Court imposes on Van Deelen. The plaintiff in Ruderer had been discharged by his employer for making false, irresponsible and malicious charges against fellow employees. Ruderer, 462 F.2d at 898. Following a formal hearing and administrative review of the hearing transcript, the plaintiff's termination was affirmed. Id. The plaintiff filed a pro se lawsuit against his former employer, the United States Army Aviation Material Command, to recover damages for the allegedly tortious and criminal acts of certain military personnel and administrators. Id. Additionally, the plaintiff filed twenty-one actions against his fellow employees who he alleges defamed him and conspired against him to effect his discharge. Id. The district court[8] dismissed the plaintiff's action against his employer and most of the actions against the plaintiff's fellow employees. Id. Additionally, the district court issued an injunction which barred the plaintiff from bringing further suits in the United States District Court for the Eastern District of Missouri on the plaintiff's claim that he was wrongfully discharged. Id. The Eighth Circuit affirmed the district court's order enjoining the plaintiff from filing lawsuits related to his allegedly wrongful termination and provided the following reasoning in support of its decision:

> In our view, appellant's affinity for litigation, standing alone, would not prove a sufficient reason for issuing such an injunction. We believe, however, that the district court acted properly in this case. The district court found that appellant filed the present suit in bad

---

[8]United States District Court for the Eastern District of Missouri, Judge William H. Webster presiding.

Case 4:04-cv-00989-GAF    Document 151    Filed 07/24/06    Page 26 of 34

faith and in furtherance of a personal vendetta against the United States. The district court also found that appellant had been afforded a full opportunity to present his claims and that further suits on these claims would uselessly consume the court's time. We have thoroughly reviewed the record, and we agree with these findings. Given these findings, the district court acted properly in issuing the injunction.

Ruderer, 462 F.2d at 899.

In the present case, Van Deelen filed this lawsuit asserting claims arising out of his allegedly wrongful discharge against the City, its Human Resources Board and twelve City employees and agents. Like the district court in Ruderer, this Court finds that the pro se plaintiff in the present case, Van Deelen, filed this action in bad faith and in furtherance of a personal vendetta against the City and its employees and agents. As Van Deelen's claims proceeded to the dispositive motion and trial stage, this Court finds that Van Deelen has had a full and fair opportunity to present his claims against the City and its employees and that further suits would uselessly consume the Court's time. Accordingly, this Court finds it necessary to enjoin Van Deelen from filing future pro se lawsuits against the City and its employees.

The Eighth Circuit has repeatedly affirmed district court orders enjoining the filing of future litigation as a sanction for abuse of the judicial process. *See* Sassower v. Carlson, 930 F.2d 583 (8th Cir. 1991); Peck v. Hoff, 660 F.2d 371(8th Cir. 1981); and Green v. White, 616 F.2d 1054 (8th Cir. 1980). More recently, in Jackson v. Armontrout, 26 F.3d 126 (Table) (8th Cir. 1994) (unpublished), the Eighth Circuit affirmed a district court order dismissing the plaintiff's lawsuit and limiting future in forma pauperis filings. The plaintiff in Jackson was an inmate who had filed twelve in forma pauperis lawsuits. Id. The court held that filing "multitudes of frivolous suits" is not a prerequisite to the imposition of limits on a plaintiff's right to proceed in forma pauperis. Id. Rather, a litigant's "regular refusal to obey the court's rules and orders

Case 4:04-cv-00989-GAF   Document 151   Filed 07/24/06   Page 27 of 34

disrupts the legal system, increases the burden on limited court resources, and justifies limiting his ability to proceed in forma pauperis." Id.

Similarly, this Order enjoining Van Deelen from filing future pro se lawsuits against the City and its employees or proceeding pro se in those currently pending, is not premised on the number of lawsuits Van Deelen has filed against the City and its employees nor is it based upon Van Deelen's history of filing pro se lawsuits.[9] Rather, the sanction is imposed in response to Van Deelen's fabrication of evidence coupled with his abuse of the judicial process herein and his disrespectful and argumentative conduct throughout the course of the trial. Accordingly, to deter Van Deelen from litigation which is not aimed at protecting his own rights but rather aimed at maliciously vexing and annoying the City and its employees, the Court hereby enjoins Van Deelen from filing future pro se litigation against the City and its employees. Furthermore, on all pending litigation against the City, its agents and employees or against any entity or individual arising out of Van Deelen's termination or any matter relating thereto, Van Deelen must secure and maintain throughout the litigation the entry of appearance of an attorney licensed to practice in the appropriate jurisdiction within 30 days of the date of this Order or dismiss the action.

_____

[9]Van Deelen has a history of filing pro se litigation. Van Deelen, et al., v. Martin, Case No. 2:97-CV-2358-GTV-GLR (D. Kan.) (dismissed without prejudice); Van Deelen v. Arnold-Burger et al., Case No. 6:03-CV-1322-MLB-DWB (D. Kan.) (dismissed pursuant to Fed. R. Civ. P. 41(a)(1); Van Deelen v. McAnany, 6:03-CV-1408-MLB-KMH (D. Kan.) (dismissed pursuant to Fed. R. Civ. P. 12(b)(1); Van Deelen v. Shawnee Mission Un., et al., Case No. 2:03-CV-2018-CM (D. Kan.) (dismissed pursuant to Fed. R. Civ. P. 12(b)(6)); Van Deelen v. Fairchild, et al., Case No. 2:05-CV-2017-KHV-DJW (D. Kan.) (dismissed pursuant to Fed. R. Civ. P. 12(b)(1)); Van Deelen v. City of Kansas City, Missouri, et al., Case No. 2:05-CV-2028-KHV-JPO (D. Kan.); Van Deelen v. Johnson, et al., Case No. 2:05-CV-2052-CM-DJW (D. Kan.) (dismissed pursuant to Fed. R. Civ. P. 41(a)(1)); Van Deelen v. Johnson, et al., Case No. 5:05-CV-4039-SAC (D. Kan.); Van Deelen v. Fenner, Case No. 4:06-CV-162-HFS (W.D. Mo.) (dismissed pursuant to Fed. R. Civ. P. 41(a)(1)); Van Deelen v. City of Kansas City, Missouri, et al., Case No. 04-CV-206594 (Jackson Co., Missouri).

### D. Monetary Sanctions pursuant to Rule 11

Additionally, the Court finds that it has the authority to impose monetary sanctions on Van Deelen pursuant to Fed. R. Civ. P. 11 ("Rule 11"). Rule 11 requires that by making a representation to the Court in the form of a "pleading, written motion, or other paper," an unrepresented party is certifying that such representation "is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation." Fed. R. Civ. P. 11(b)(1). Rule 11 further provides that "allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." Feb. R. Civ. P. 11(b)(3). The imposition of Rule 11 sanctions rests squarely within the sound discretion of the district court. MHC Investment Co. v. Racom Corp., 323 F.3d 620, 624 (8th Cir. 2003).

Van Deelen contends that sanctions are not appropriate pursuant to Rule 11 because the infractions identified by the Court in its show cause order do not come within the ambit of Rule 11 because Rule 11 only reaches filed, signed papers.[10] The Court rejects Van Deelen's argument as inconsistent with the spirit of Rule 11. The documents which this Court finds Van Deelen fabricated, i.e., the memo containing the purported waiver of the City's residency policy allegedly signed by Gail Roper and the letter which Van Deelen authored and allegedly sent to Gail Roper following his termination, were not individually signed by Van Deelen and filed with the Court. However, these documents were attached as exhibits to Van Deelen's cross-motion for summary judgment which he signed and submitted to the Court. These exhibits

---

[10]Van Deelen makes no argument about the imposition of sanctions pursuant to the Court's inherent authority which was clearly identified as a basis for sanctions in the Court's show cause order. (*See* Doc. #134).

were relied upon by the Court in its finding that genuine issues of material fact precluded summary judgment on the question of whether the City's residency policy was unconstitutionally vague and ambiguous. Accordingly, the Court finds that it also has the authority to impose monetary sanctions for VanDeelen's fabrication of evidence pursuant to Rule 11. The following Eighth Circuit cases demonstrate the propriety of the imposition of sanctions pursuant to Rule 11 for the fabrication of evidence.

In Pope v. Federal Express Corp., 974 F.2d 982 (8th Cir. 1992), the Eighth Circuit considered a monetary sanction imposed by the United States District Court for the Western District of Missouri, Judge Dean Whipple, presiding. Judge Whipple imposed Rule 11 sanctions on the plaintiff and her attorney for fabricating evidence. Pope, 974 F.2d at 983. Expert testimony and demonstrative evidence revealed that the plaintiff had added a handwritten note with sexual overtones to a computer generated report by using a cut and paste composite of other documents. Id. The plaintiff's attorney had knowingly produced this manufactured document in support of her client's Title VII sexual harassment case and continued to refer to and rely on it in subsequent pleadings. Id. The district court imposed Rule 11 sanctions against both the plaintiff and her attorney finding that the attorney's reliance on a demonstrably false document violated Rule 11's requirement that a signer make a reasonable inquiry into the validity of pleadings. Id. at 983-84. Consequently, Judge Whipple dismissed the plaintiff's Title VII action with prejudice and imposed attorney's fees of $30,000 jointly and severally upon the plaintiff and her attorney. Id. at 984. The district court also held the plaintiff liable for an additional $8,882.50 of legal fees, $5,000 of which constituted the cost of having a handwriting expert examine the fabricated document. Id.

On appeal, the Eighth Circuit began its analysis by finding that the fact specific determination of whether a document was manufactured was for the Court in connection with the potential imposition of Rule

30

11 sanctions.  Id.  The Eighth Circuit proceeded to find that the district court had the inherent authority to dismiss the lawsuit as a remedy for fabricating evidence.  Id.  Although the Eighth Circuit found that the district court did not abuse its discretion in awarding monetary sanctions against the plaintiff and her attorney, it remanded to the district court for reconsideration of the amount of monetary sanctions in light of recent developments in the underlying case law upon which the district court relied.  Id.

In determining the amount of monetary sanctions, Judge Whipple had relied upon White v. General Motors Corp., Inc., 699 F.Supp. 1485 (D. Kan. 1988) in which a Kansas district court had imposed an attorney's fee award of $172,382.19 against the plaintiff and plaintiff's counsel pursuant to Rule 11.  Pope, 974 F.2d at 984.  Judge Whipple noted that White had been remanded to the Kansas district court by the Tenth Circuit Court of Appeals when he issued his order imposing sanctions in Pope; however, no ruling had been reached on remand.  Id.  Following Judge Whipple's order and prior to Pope's appeal to the Eighth Circuit, the Kansas district court issued a ruling in White.  On remand, the Kansas district court revised its initial award downwards to $50,000, and imposed liability for this award solely upon the plaintiff's attorney.  Id. at 984-85.

The Eighth Circuit directed Judge Whipple to reconsider the amount of monetary sanctions imposed in light of the remand decision in White.  Id. at 985.  The Eighth Circuit further instructed Judge Whipple to consider "whether such a substantial monetary penalty constitutes the least severe sanction that will adequately deter the undesirable conduct."  Id. citing Doering v. Union County Bd. of Chosen Freeholders, 857 F.2d 191, 194 (3rd Cir. 1988).

On remand, Judge Whipple noted that the $50,000 sanction imposed against the plaintiff's attorney in White had been imposed with the Kansas district court's knowledge of the $30,000 sanction in Pope.

31

Pope v. Federal Express Corporation, 49 F.3d 1327, 1328 (8th Cir. 1995). Judge Whipple further "found that [the plaintiff's attorney] has earned and has the capacity to earn a substantial income by practicing law." Id. The district court concluded that the purposes of Rule 11 and the plaintiff's attorney's conduct warranted a $25,000 sanction against the attorney, individually. Id. The court further determined that the plaintiff had the ability to pay $8,882.50 in costs and fees and retained that individual sanction against her. Id.

On appeal, the Eighth Circuit affirmed this modification of the monetary sanction assessed against the plaintiff and her attorney. Id. The Eighth Circuit further identified the following factors in determining the appropriate sanction: (1) the wrongdoer's history, experience and ability; (2) the severity of the violation; (3) the degree to which malice or bad faith contributed to the violation; and (4) other factors. Id. citing White v. General Motors Corp., 908 F.2d 675, 685 (10th Cir. 1990), cert. denied, 498 U.S. 1069 (1991). The Eighth Circuit ultimately concluded that the district court did not abuse its discretion in assessing a $25,000 sanction against the plaintiff's attorney and a $8,882.50 sanction against the plaintiff. Pope, 49 F.3d at 1328.

The Court finds that this $6,000 monetary sanction imposed against Van Deelen is the least severe sanction that will adequately deter Van Deelen's undesirable conduct. This monetary sanction pales in comparison to the $50,000 sanction imposed in White and is consistent with the $8,882.50 sanction imposed against the plaintiff in Pope for substantially similar conduct. Although Van Deelen represents to the Court that he is currently unemployed, Van Deelen has the capacity, given his education and prior job

experience[11], to earn an income sufficient to satisfy this monetary sanction. The Court believes that such a sanction may encourage Van Deelen to return to the workplace, rather than focusing his time and attention on filing lawsuits in bad faith with the intention of harassing the City and its employees.

Van Deelen has a history of filing pro se lawsuits and appears to be well versed in the basic tenets of the Federal Rules of Civil Procedure. His experience filing lawsuits in and appearing before the United States District Court, coupled with common sense, should have made Van Deelen aware that fabricating evidence to support his claims constitutes a grievous offense. As previously noted above, the Court finds that Van Deelen filed this lawsuit and presented the corresponding fabricated evidence in bad faith with the intention of harassing the City and its employees. Accordingly, the Court finds that it also has the authority, pursuant to Rule 11, to impose monetary sanctions against Van Deelen as a remedy for his fabrication of evidence.

## CONCLUSION

Throughout the course of this lawsuit, both prior to and during trial, Van Deelen exhibited a familiarity with the Federal Rules of Civil Procedure and Evidence, this Court's Rules of Trial and a knowledge of pertinent case law. In spite of the fact that Van Deelen showed an understanding of the law and the process far beyond a typical pro se litigant, he elected to use his knowledge of the system to be abusive and disruptive to the Court, witnesses at trial and opposing counsel. The record and transcript of this proceeding is insufficient to convey the delay caused by Van Deelen, and his condescending,

---

[11]At trial, Van Deelen testified that he graduated from Stanford with a B.A. in economics and from Massachusetts Institute of Technology with a M.S. in management and that he had significant employment experience in the information technology field. (Trial Tr. 842:12-844:17).

argumentative and contemptuous attitude towards witnesses, opposing counsel and the Court. It is apparent to the Court that while Van Deelen sought to prevail, his main objective herein was to harass and punish, by means of this litigation, those he felt had anything to do with his termination. Van Deelen's actions herein constituted an egregious abuse of process.

Accordingly, to deter future abuses of the judicial process, the Court HEREBY IMPOSES a monetary sanction on Van Deelen in the form of attorney's fees to be paid to the City in the amount of $6,000. Furthermore, Van Deelen is HEREBY ENJOINED from filing future pro se litigation against the City, its agents and employees. On all pending litigation against the City, its agents and employees or against any entity or individual arising out of Van Deelen's termination or any matter relating thereto, Van Deelen is HEREBY ORDERED to secure and maintain throughout the litigation the entry of appearance of an attorney licensed to practice in the appropriate jurisdiction within 30 days of the date of this Order or dismiss the action.

**IT IS SO ORDERED.**

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED: July 24, 2006

34